FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 15, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MARGARITA TORRES FLORES,<br><br>　　　　　　Defendant. | CASE NO. 4:17-cr-6015-EFS-2<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF UNDER 18 U.S.C. § 3582(c)(1)(A)(i)** |

Before the Court is Defendant Margarita Torres Flores' Motion for Relief under 18 U.S.C. § 3582(c)(1)(A)(i).[1] Defendant seeks a reduction of the sentence of imprisonment imposed as part of her supervised-release (SR) revocation judgment. For the reasons that follow, the Court denies Defendant's motion.

### I.　BACKGROUND

In December 2017, the Court sentenced Defendant to time served—only about four days—for the offense of distributing methamphetamine.[2] The Court found this comparatively low sentence to be appropriate largely based on her lack

---

[1] ECF No. 344.

[2] ECF No. 100.

Order - 1

of criminal history, finding that "if she takes advantage of the structure and resources provided to her on supervised release, she has the potential to live a successful and crime-free life."[3]  Unfortunately, however, Defendant soon committed another crime and began what would become a pattern of substance abuse and noncompliance with her SR conditions.

In December 2017, less than two weeks after sentencing, Defendant committed fraud by trying to cash a stolen money order.  Due to this new crime and Defendant's repeated methamphetamine use, the Court revoked her SR in February 2018, sentencing her to 4 months of imprisonment and 44 months of SR thereafter.[4]

In January 2019, Defendant failed to report as directed, failed to comply with drug treatment, and failed to submit to drug testing as directed.  In May 2019, the Court again revoked her SR, this time sentencing Defendant to 3 months of imprisonment and a 41-months SR term to follow.[5]

From December 2019 through March 2020, Defendant repeatedly used drugs (primarily methamphetamine), failed to comply with required drug treatment and testing, and lied regarding her drug use.  The Court therefore revoked her SR for a

---

[3] ECF No. 101 at 5.

[4] ECF No. 153.

[5] ECF No. 186.

1  third time in April 2020 and imposed a 10-month sentence of imprisonment with
2  24 months of SR thereafter.[6]

3        In May and June of 2022, Defendant again repeatedly lied to her supervising
4  officer, used methamphetamine, failed to comply with drug testing, and failed to
5  report as instructed.  In addressing what sanctions should result, Defendant
6  reported to the Court that on June 9, 2022, she learned she is pregnant.[7]
7  Defendant also reported that on the next day, June 10, 2022, she was involved in a
8  car accident, and she submitted a letter from her chiropractor stating that she was
9  receiving treatment for resulting injuries.[8]  In August 2022, considering these
10 factors—along with the other applicable factors under 18 U.S.C. §§ 3553(a) and
11 3583(e)—the Court imposed Defendant's fourth and final revocation judgment,
12 sentencing Defendant to 180 days' imprisonment and no SR term to follow.[9]

13       After sentencing, Defendant was returned to the Yakima County Jail to
14 await transfer to a BOP facility.[10]  But, because of the brevity of her sentence,

---

[6] ECF No. 235.

[7] *See* ECF No. 340 at 4.

[8] *See* ECF No. 340 at 4; ECF No. 340-1.

[9] ECF No. 342.

[10] ECF No. 344-1.

1 however, Defendant never received a BOP-facility designation. Defendant remains
2 in the county jail and is scheduled for release on or about December 3, 2022.[11]

## II.  ANALYSIS

Modification of an imposed term of imprisonment is governed by 18 U.S.C. § 3582(c). Regarding an inmate's ability to request what is commonly referred to as "compassionate release," § 3582(c)(1)(A)(i) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that--
> (1) in any case--
>   (A) the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>     (i) extraordinary and compelling reasons warrant such a reduction; . . .
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

**A.  An inmate serving a prison term resulting from an SR violation may seek compassionate release under § 3582(c)(1)(A)(i).**

As a preliminary matter, the United States argues that § 3582(c)(1)(A)(i) does not apply here because "compassionate release motions only apply to terms of

---

[11] ECF No. 344-1.

imprisonment and not supervised release revocation sentences."[12]  The United States argues that any such relief must be sought via 18 U.S.C. § 3583.[13]  The Court disagrees.

Section 3583(e) authorizes a sentencing court to—under appropriate circumstances—modify previously imposed terms of SR in several ways: (1) grant early termination of the SR term, (2) extend the SR term, (3) add to or withdraw from the SR conditions, (4) revoke the SR term and "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release."[14]  All of these options apply to a defendant who is currently on SR.  Nothing in § 3583(e), or any other part of § 3583, speaks to a defendant who had her prior term of SR revoked and is serving a period of incarceration as part of the resulting revocation judgment.  Indeed, until Defendant concludes her current term of imprisonment, she will not be subject to any SR term to which § 3583 could apply.[15]

---

[12] ECF No. 347 at 9.

[13] *See* ECF No. 347 at 3.

[14] *See* 18 U.S.C. § 3583(e)(1)–(3); *see also id.* § 3583(e)(1) (allowing a court to require home confinement as an alternative to incarceration).

[15] *See* 18 U.S.C. § 3624(e) ("The term of supervised release commences on the day the person is released from imprisonment and . . . does not run during any period in which the person is imprisoned. . . ."). *See also* MOTION FOR SENTENCE

In contrast, § 3582(c)(1)(A) states that it applies to a "term of imprisonment" and does not distinguish between imprisonment imposed as part of the original criminal judgment versus a term imposed as part of a later revocation judgment.[16] Further, post-revocation sanctions—including a period of incarceration—are "part of the penalty for the initial offense."[17] "The defendant receives a term of supervised release thanks to [her] initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for [her] crime."[18] It therefore makes sense that of all the cases the Court has reviewed involving

---

REDUCTION PURSUANT TO 18 U.S.C. § 3582, PRFSG § 10.06 n. 167 ("If the defendant is not presently serving a term of imprisonment, § 3582(c)(1)(A) does not apply. If the defendant was previously in prison and is now on supervised release, he or she may be able to ask for modification of the release term under 18 U.S.C. § 3583(e)(1).")

[16] *Cf. United States v. Island*, 336 F. App'x 759, 760–61 (9th Cir. 2009) (unpublished) ("Though the term of supervised release is part of the sentence, it is not part of the 'term of imprisonment.'").

[17] *Johnson v. United States*, 529 U.S. 694, 700 (2000).

[18] *United States v. Haymond*, 139 S. Ct. 2369, 2380 (2019).

Order - 6

1    circumstances similar to Defendant's, the review court determined that
2    § 3582(c)(1)(A) could apply.[19]

3    It does not appear the Ninth Circuit has addressed this precise issue lately.
4    But in 1996, in the case of *United States v. Etherton*, a Ninth Circuit panel was
5    presented with a defendant seeking to reduce a term of imprisonment imposed as
6    part of a revocation judgment, citing a subsequent reduction in the applicable
7    Guidelines.[20]  The panel was therefore presented with the question of "whether the
8    district court had discretion under section 3582(c)(2) to reduce [the defendant]'s

---

[19] *See, e.g.*, *United States v. Venable*, 943 F.3d 187, 194 (4th Cir. 2019) ("[T]he district court had the authority to consider his motion for a sentence reduction, just as if he were still serving the original custodial sentence."); *United States v. Gonzalez*, 9 F.4th 1327, 1331 (11th Cir. 2021) (same), *vacated on other grounds* 142 S. Ct. 2900 (2022); *see also Johnson,* 529 U.S. at 712–13 (discussing how the proceeding resulting in the revocation of an SR term is akin to the initial sentencing except for further limitations set forth in § 3583 and therefore concluding that revocation judgments may also include a term of SR to follow any imprisonment imposed).

[20] *United States v. Etherton*, 101 F.3d 80 (9th Cir. 1996) *superseded by regulation on other grounds, as recognized by United States v. Morales*, 590 F.3d 1049, 1052 (9th Cir. 2010).

1  sentence pursuant to the revocation of supervised release."[21]  The panel reasoned,
2  "we interpret the statute's directive that 'the court may reduce the term of
3  imprisonment' as extending to the entirety of the original sentence, including
4  terms of imprisonment imposed upon revocation of supervised release."[22]  It
5  therefore concluded that because the defendant had been sentenced "'based on a
6  sentencing range that has subsequently been lowered,' the court had authority to
7  exercise its discretion to reduce the sentence under section 3582(c)(2)."[23]  And,
8  although the *Etherton* panel's ultimate holding has since been superseded by an
9  update to the Guidelines, that update neither applies here nor undermines the
10 panel's sound reasoning.[24]

11      Accordingly, the Court holds that 18 U.S.C. § 3582(c)(1)(A) is available to an
12 inmate currently serving a federal term of imprisonment imposed as part of a
13 revocation judgment.

---

[21] *Etherton*, 101 F.3d at 81.

[22] *Etherton*, 101 F.3d at 81.

[23] *Etherton*, 101 F.3d at 81.

[24] *See* U.S.S.G. § 1B1.10 (providing that a term of imprisonment imposed as part of a revocation judgment should not be reduced under 18 U.S.C. § 3582(c)(2) based on the Guidelines applicable to the original offense subsequently being lowered); *see also Morales*, 590 F.3d at 1052 (noting the change in law after *Etherton*).

B.   **Administrative-exhaustion requirements do not bar relief here.**

The United States argues that Defendant failed to satisfy § 3582(c)(1)(A)'s exhaustion requirement before filing the instant motion.[25] Though not a bar to subject-matter jurisdiction, "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked"; if timely raised, strict compliance is required.[26] Still, there is a question about whether § 3582(c)(1)(A)'s exhaustion requirement apply where—as here—the inmate seeking relief is not housed in a facility operated by the Bureau of Prisons (BOP).

The Court has previously been informed that the BOP either cannot or will not entertain a request by a non-BOP inmate to seek a § 3582(c) sentence reduction on the inmate's behalf. A few years ago, in *United States v. Gonzalez*, the inmate seeking a sentence reduction was similarly serving out a federal sentence in a county jail.[27] There, defense counsel had contacted the BOP and asked which office could process the inmate's request for compassionate release. The BOP responded that because the inmate was not yet in a designated BOP facility, no one at the BOP was capable of processing such a request. The BOP employee "indicated that

---

[25] ECF No. 347.

[26] *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).

[27] *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1195–96 (E.D. Wash. 2020).

1  the exhaustion of administrative appeals process was not applicable or possible
2  and suggested contacting the sentencing Court for relief."²⁸

3  Despite this, the United States nonetheless asserts that Defendant was
4  required to, at a minimum, contact the BOP to request relief before filing a motion
5  with the Court.²⁹ The United States argues that inmates in Defendant's position
6  "should at least notify the BOP to attempt to pursue administrative remedies
7  before the court can determine that exhaustion is futile."³⁰ Yet, it is the United
8  States—as the party invoking administrative-exhaustion requirements—that
9  generally bears the initial burden of "proving that an administrative remedy was
10 available to the prisoner and that [s]he failed to exhaust such remedy."³¹

---

²⁸ *Gonzalez*, 451 F. Supp. at 1195–96.

²⁹ *See* ECF No. 347 at 12–13.

³⁰ *See* ECF No. 347 at 12 (cleaned up) (quoting *United States v. Dailey*, No. 2:13-CR-00118 KJM, 2020 WL 2195926, at *1 (E.D. Cal. 2020)).

³¹ *See Draper v. Rosario*, 836 F.3d 1072, 1079 (9th Cir. 2016) (examining the Prison Litigation Reform Act (PLRA) and applying a burden-shifting framework because "non-exhaustion is an affirmative defense"); *Sarei v. Rio Tinto*, PLC, 550 F.3d 822, 831–32 (9th Cir. 2008) (same, but in the context of the Alien Tort Statute); *see also Jones v. Bock*, 549 U.S. 199, 217 (2007) ("Given that the PLRA does not itself require [inmates] to plead exhaustion, such a result must be obtained by the

The United States, however, does not articulate who would be considered "the warden of [Defendant's] facility" for purposes of § 3582(c)(1)(A), the manner in which Defendant could have delivered to such warden a request that the BOP file a motion on her behalf, or how she could have otherwise appealed the BOP's failure to bring such a motion.[32] Moreover, to be "available," the administrative remedy at issue must be capable of accomplishing its intended purpose,[33] but the United States does not explain what, if anything, would have enabled the BOP to file a motion on Defendant's behalf.[34]

---

process of amending the Federal Rules, and not by judicial interpretation." (cleaned up)).

[32] *See* 18 U.S.C. § 3582(c)(1)(A). *Cf. United States v. Arreola-Bretado*, 445 F. Supp. 3d 1154, 1157 (S.D. Cal. 2020) ("This Court can envision no situation more futile than being required to petition to a BOP warden who does not exist.").

[33] *See Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. . . . [T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'").

[34] By its very terms, § 3582(c)(1)(A)'s exhaustion requirement clearly has the purpose of ensuring that the BOP is provided an opportunity to seek a sentence reduction on behalf of an inmate before that inmate may properly seek such relief herself. Thus, only if the BOP can file a § 3582(c) motion on Defendant's behalf

Order - 11

Because the Court is unaware of any administrative remedies that were truly "available" to Defendant for purposes of § 3582(c)(1)(A), the Court finds it would be inappropriate to bar relief based on the statute's administrative-exhaustion requirements.[35] The Court finds that the United States failed to meet its initial burden by articulating administrative remedies applicable to Defendant's circumstances. As such, the burden never shifted to Defendant to prove the futility of such remedies.[36] Moreover, the preponderance of the evidence shows that it would indeed have been futile for Defendant to pursue administrative remedies in this case.

**C.  Defendant fails to demonstrate that extraordinary and compelling reasons justify her release.**

Under 18 U.S.C. § 3582(c)(1)(A), the Court's first step in reviewing the merits of Defendant's motion is to determine whether she has established

---

will an administrative remedy be truly "available" to her. *See Ross*, 578 U.S. at 642.

[35] *See id.* ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. . . . [T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'").

[36] *See Draper*, 836 F.3d at 1079.

1  "extraordinary and compelling reasons" that warrant the requested sentence reduction.[37]

In her motion, Defendant contends that she should be immediately released based on a combination of her pregnancy, the risks posed by Covid-19, and her "health complication: stemming from the June 2022 car accident.[38] She also argues that she has less access to prenatal healthcare than she would if released into the community and that she could face extra delays if she were to go into early labor while in jail.[39]

When the Court originally imposed Defendant's 180-day sentence, it had already fully considered each of the circumstances that Defendant now asserts to justify the rare and exceptional relief of compassionate release. Defendant does not suggest that her pregnancy involves any unusual circumstances, complications, or other special concerns beyond those inherent in all pregnancies. Although Defendant refers generally to "her recovery from [the] June car accident" as being "another health complication," she gives no indication as to the nature or severity

---

[37] 18 U.S.C. § 3582(c)(1), *as modified by United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) (determining that U.S.S.G. 1B1.13 is not binding on the district court but may be considered).

[38] ECF No. 344 at 11–14.

[39] ECF No. 344 at 13.

of her car-accident injuries or how they impact other health concerns.[40] Nor does Defendant claim to suffer from any other health conditions that would further increase her risk of complications as to her pregnancy and/or Covid-19.[41] Put simply, Defendant does not assert any facts that would distinguish her in a meaningful way from any other woman incarcerated during the late stages of pregnancy.[42] The Court therefore finds that Defendant's asserted reasons are not

---

[40] See ECF No. 344 at 12–13.

[41] The Centers for Disease Control and Prevention (CDC) includes pregnancy in the list of underlying medical conditions that can increase a person's risk of severe illness from Covid-19 and states that contracting Covid-19 during pregnancy increases the risk of complications that can affect the pregnancy and developing baby; even so, the CDC also notes that "the overall risks are low." *See* CDC, *Pregnant and Recently Pregnant People at Increased Risk for Severe Illness from Covid-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/pregnant-people.html (updated Oct. 25, 2022).

[42] Defendant's circumstances are therefore factually distinct from the cases she cites as support. *See United States v. Pardo*, No. 1:14-CR-376, 2021 WL 5447658 (E.D. Va. 2021) (involving "significant complications during her pregnancy"); *United States v. Morrissey*, No. 8:18-CR-275, 2020 WL 5849645 (D. Neb. 2020) (involving additional health conditions that placed her at "a particularly high risk"); *United States v. Schneider*, No. 14-CR-30036, 2020 WL 2556354 (C.D. Ill.

"extraordinary and compelling" for purposes of warranting compassionate release under § 3582(c)(1)(A).

**D.    The applicable § 3553 factors weigh against compassionate release.**

Where extraordinary and compelling reasons might otherwise warrant a sentence reduction, before granting relief, courts must first consider "the factors set forth in section 3553(a) to the extent that they are applicable." Further, although not binding where a defendant has filed her own motion, "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant."[43]

Here, even if Defendant had set forth extraordinary and compelling reasons that might otherwise warrant a sentence reduction, the Court finds the applicable § 3553(a) factors remain unchanged since the Court originally imposed Defendant's revocation sentence. As such, those factors—especially the need to avoid unwarranted sentencing disparities, reflect the seriousness of the violations, promote respect for the law, and provide just punishment—weigh against now reducing Defendant's sentence, and the Court would independently deny relief on that basis.

//

---

2020) (involving the added health condition of asthma). *See also* ECF No. 344 at 12 n. 44 (citing each of the foregoing cases).

[43] *Aruda*, 993 F.3d at 802.

**E.     Conclusion: Defendant's motion for compassionate release is denied.**

The Court concludes that § 3582(c)(1)(A) extends to terms of imprisonment imposed as part of a revocation judgment for SR violations.  The Court also finds that Defendant's motion is not barred by administrative-exhaustion requirements.  Even so, the Court finds Defendant fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the applicable § 3553(a) factors support release.  The Court therefore denies her motion.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Relief Under 18 U.S.C. § 3582(c)(1)(A)(i), **ECF No. 344**, is **DENIED**.

2. This case shall remain **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to enter this order and provide copies to all counsel.

**DATED** this  15th     day of November 2022.

*Edward F. Shea*
EDWARD F. SHEA
Senior United States District Judge